1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINDSAY K.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. C21-05033-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff appeals a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's applications for disability benefits after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for an award of benefits.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1981.[1] Plaintiff has at least a high school education and previously worked as collection clerk and customer service representative. AR 987. Plaintiff filed an application for Disability Insurance Benefits (DIB) on March 8, 2015, and an application for

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Supplemental Security Income (SSI) on March 10, 2015, alleging disability beginning December 30, 2008 AR 955. The applications were denied at the initial level and on reconsideration. On August 23, 2017, the ALJ held a hearing in Salt Lake City, Utah, and took testimony from Plaintiff and a vocational expert (VE). AR 46–63. On November 8, 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 18–30. Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on September 17, 2018 (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed the final decision of the Commissioner to the Court. On October 8, 2019, the Court reversed and remanded the case for further administrative proceedings. AR 1078–90.

On June 25, 2020, the ALJ held a telephone hearing through the Tacoma, Washington, hearing office and took testimony from Plaintiff and a VE. AR 998–1039. At the hearing, Plaintiff amended the alleged onset date to December 4, 2013. AR 1004. On September 22, 2020, the ALJ issued a decision finding Plaintiff not disabled. AR 955–88. Because this case was previously remanded by this Court, Plaintiff appeals this final decision of the Commissioner to this Court. *See* 20 C.F.R. §§ 404.984, 416.1484.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

ORDER
PAGE - 2

1   (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

2   decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th

3   Cir. 2002).

4   ## DISCUSSION

5   The Commissioner follows a five-step sequential evaluation process for determining

6   whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

7   At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ

8   found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 958.

9   At step two, the ALJ must determine whether a claimant suffers from a severe impairment.

10  The ALJ found Plaintiff has the following severe impairments: lumbar spine degenerative disc

11  disease; irritable bowel syndrome (IBS); gastroesophageal reflux disease (GERD); obesity; major

12  depressive disorder; and generalized anxiety disorder. AR 958. The ALJ also found that the record

13  contained evidence of the following conditions that did not rise to the level of severe impairment:

14  mild right shoulder generative joint disease; hyperlipidemia; leukocytosis; fatty liver; status post

15  cholecystectomy; dental abscess; upper respiratory infection; mastoiditis; vaginal candidiasis;

16  rash; flat wart; bacterial conjunctivitis; urinary frequency, and cysts. AR 959–60.

17  At step three, the ALJ must determine whether a claimant's impairments meet or equal a

18  listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of

19  a listed impairment. AR 960–62.

20  If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

21  residual functional capacity (RFC) and determine at step four whether the claimant has

22  demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform

23  light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

ORDER
PAGE - 3

> She can never climb ladders, ropes, or scaffolds. She can
> occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs.
> She can have no exposure to hazards (as defined by the Dictionary
> of Occupational Titles (DOT)). She can perform simple routine
> tasks. She can have no contact with the public. She can have
> occasional superficial contact with co-workers.

AR 962. With that assessment, the ALJ found Plaintiff unable to perform any past relevant work. AR 986.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as work as a small products assembler, garment folder, and electrical accessories assembler. AR 987.

Plaintiff raises the following issues on appeal: (1) Whether the appointment of Andrew Saul as a single member-head Commissioner of SSA, removable only for cause and serving a term longer than the President's, violates separation of powers, as conceded by the Office of Legal Counsel, such that the decision in this case, by an ALJ who derived his authority from Mr. Saul, is constitutionally defective; (2) whether the ALJ provided sufficient reasons to reject the opinion of Dr. Hopfenbeck; (3) whether the ALJ provided sufficient reasons to reject the opinion of treating nurse practitioner Jessica Stevens, FNP; (4) whether the ALJ provided sufficient reasons to reject the opinions of counselor Jamie Arbizu, CMHC; and (5) whether the ALJ provided sufficient reasons to reject Plaintiff's subjective claims. Plaintiff requests remand for an award of benefits or, in the alternative, remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

ORDER
PAGE - 4

### 1. Separation of Powers

Plaintiff argues that ALJ's decision denying Plaintiff's claim was constitutionally defective because 42 U.S.C. § 902(a)(3), which limits the President's authority to remove the Commissioner without good cause, violates the separation of powers under *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). Dkt. 13, at 5. Plaintiff argues that the ALJ's decision should be remanded for a new hearing before a different ALJ based on this constitutional defect. *Id.* at 8. The Commissioner does not dispute that Section 902(a)(3) is constitutionally defective; however, the Commissioner asserts that the constitutional defect does not support setting aside the ALJ's denial of benefits. Dkt. 22, at 3.

Under *Collins v. Yellen*, 141 S. Ct. 1761 (2021), a plaintiff seeking relief based on the existence of an unconstitutional statutory removal restriction must show harm in order to be entitled to such relief. *Id.* at 1787–89; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions."). In *Collins*, the Supreme Court noted that "it is still possible for an unconstitutional provision to inflict compensable harm"; however, the Supreme Court remanded the matter to the lower trial court for a determination in the first instance as to whether the party alleging constitutional error suffered "compensable harm." *Collins*, 141 S. Ct. at 1789. Notably, the Supreme Court did not provide administrative relief or remand to the agency based on the existence of an unconstitutional removal provision within the underlying statutory scheme absent a finding from the trial court of harm. *Id*. Here, because the Court is making a determination regarding an alleged constitutional error in the first instance, Plaintiff must show that she suffered harm from the error in order to be entitled to a remedy from this Court.

Plaintiff argues that, "[a]s the single member-head in an unconstitutional structure, the

ORDER
PAGE - 5

Commissioner had no authority to delegate to the ALJ in the case at bar to make findings of fact and issue the decision as to benefits eligibility." Dkt. 13, at 5. Plaintiff argues in her Reply Brief that "[t]he constitutional harm should be considered actual harm in itself because it was a violation of Article II and the separation of powers . . . ." Dkt. 29, at 8 (citing *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018)). Plaintiff's argument, however, has been rejected by the Supreme Court. In *Collins*, the Supreme Court held that the existence of an unconstitutional removal provision does not provide a basis to conclude that the agency head subject to the removal provision "lacked the authority to carry out the functions of the office." *Collins*, 141 S. Ct. at 1787. Similarly, in *Seila Law LLC*, the Supreme Court held that an unconstitutional removal provision does not *per se* render the whole underlying act void. 140 S. Ct. at 2211; *see also Collins*, 141 S. Ct. at 1787 n.23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . ."); *id.* at 1082 (Kagan, J., concurring in part and concurring in the judgment) ("[G]iven the majority's remedial analysis, I doubt the mass of [Social Security Administration] decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference . . . ."). Because Plaintiff has not shown that she experienced compensable harm based on the constitutional defect of Section 902(a)(3), Plaintiff has failed to show that she is entitled to a new hearing based on the existence of a constitutional defect in Section 902(a)(3).[2] *See Decker Coal Co.*, 8 F.4th at 1138 ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on

---

[2] Even if the Court's conclusion herein was not dispositive, other doctrines likely prevent Plaintiff's recovery. *See* Dkt. 22, at 10–15 (citing harmless error doctrine, the *de facto* officer doctrine, the rule of necessity, and broad prudential considerations).

ORDER
PAGE - 6

that ground.").

Plaintiff argues in her Reply Brief that all of the relevant agency actions in this case occurred during Commissioner Saul's tenure and that, throughout his tenure, the ALJ and the Appeals Council "were insulated by two-layers of for-cause removal, their own and that of Commissioner Saul above them." Dkt. 29, at 6–7 (citing 5 U.S.C. § 7521). Plaintiff argues that this structure violated separation of powers pursuant to *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S 477 (2010). *Id.* at 6–7 (also citing *Decker Coal Co.*, 8 F.4th at 1133, 1135). Plaintiff fails to draw a meaningful distinction between a separation of powers violation under *Free Enterprise* and a separation of powers violation under *Seila Law* under the circumstances of this case.[3] As described above, a plaintiff seeking relief based on the existence of an unconstitutional statutory removal restriction must show harm in order to be entitled to such relief. *See Collins*, 141 S. Ct. at 1787–89. Because Plaintiff has failed to show that she experienced compensable harm from a constitutionally defective removal provision, she has not shown that she is entitled to a new hearing on that basis.

The Commissioner further argues that "the absence of a nexus between the purported harm and challenged removal restrictions 'defeats the . . . argument for setting aside' agency action." Dkt. 22, at 5 (citing *Collins*, 141 S. Ct. at 1787). The Commissioner argues that no such nexus exists in this case because the ALJ held an appointment that was ratified by then-Acting Commissioner Berryhill, who, the Commissioner asserts, "enjoyed no statutory tenure protection." *Id.* at 6 (citing 42 U.S.C. § 902(b)(4) and *Collins*, 141 S. Ct. at 1783). In *Collins*, the Supreme Court held that "[w]hen a statute does not limit the President's power to remove an agency head,

---

[3] Plaintiff does not separately challenge the constitutionality of 5 U.S.C. § 7521. *See* Dkt. 29, at 8 ("[I]t is the same separation of powers issue as before and Plaintiff replies in this Reply Brief to Defendant's reliance upon *Decker*.").

ORDER
PAGE - 7

we generally presume the officer serves at the President's pleasure." *Collins*, 141 S. Ct. at 1783. Here, Section 902(b)(4) provides that the presidentially appointed Deputy Commissioner or another office of the Government designated by the President shall serve as Acting Commissioner "during the absence of disability of the Commissioner. 42 U.S.C. § 902(b)(4). Neither provision governing the Deputy Commissioner or another presidentially designated Acting Commissioner contain removal restrictions. Therefore, Plaintiff is not entitled to relief on the additional ground that the ALJ that adjudicated Plaintiff's claim was not appointed by an agency head who was subject to a constitutionally defective removal restriction.

For these reasons, the Court concludes that, although the parties do not dispute that Section 902(a)(3) is constitutionally defective, the defect is not grounds to reverse and remand the ALJ's decision in this matter.

## 2. Medical Opinions

The regulations applicable to Plaintiff's case require the ALJ to weigh medical opinions regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Under these regulations, the ALJ is required to give "controlling weight" to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record."[4] *Id*. §§ 404.1527(c)(2), 416.927(c)(2). More weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight should be given to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where not contradicted by another

---

[4] In 2017, the Social Security Administration amended its regulations and removed the "controlling weight" requirement for all applications filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c (2017). Because Plaintiff's claim was filed before March 27, 2017, the new rules are not applicable to Plaintiff's case.

1  doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing"

2  reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Where contradicted, a treating or

3  examining doctor's opinion may not be rejected without "'specific and legitimate reasons'

4  supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830–31 (quoting

5  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

6       With these regulations and considerations in mind, the Court proceeds to its analysis of the

7  medical evidence in this case.

8       A.  Dr. James R. Hopfenbeck, M.D.

9       Dr. Hopfenbeck reviewed records and examined Plaintiff on June 5, 2020. AR 1295–1303.

10  Dr. Hopfenbeck diagnosed Plaintiff with PTSD and noted that Plaintiff also meets the criteria for

11  major depression and panic disorder. AR 1301. Dr. Hopfenbeck opined that, even in a low-stress

12  and relatively solitary work environment, Plaintiff would "resume her pattern of making many

13  mistakes, needing a lot of time off-task and away from work, and her tendency to panic would

14  result in disturbing episodes of tearfulness, obviously being distraught, and psychomotor agitation

15  such that she would be a strong distraction to any others in the workplace." AR 1302.

16  Dr. Hopfenbeck opined that "[h]er severe depression would also be a strong barrier to being able

17  to maintain focus, relate to others, or otherwise be accommodated" and that Plaintiff's

18  "improvement is highly unlikely." AR 1302. Dr. Hopfenbeck assessed that Plaintiff would be

19  precluded in her performance or productivity for 20 to 30% of an eight-hour workday in areas of

20  understanding and memory, sustained concentration and persistence, social interaction, and

21  adaptation; would be off task for more than 30% of an eight-hour workday; would be absent five

22  days or more a month; and meets the criteria of listing 12.04 and 12.06. AR 1304–08.

23  Dr. Hopfenbeck further opined that, as a result of Plaintiff's IBS, Plaintiff's "symptoms of

stress/depression, poor concentration and attention, proneness to panic and anxiety, and fatigue have worsened, complicated, and limited her overall functional capacity." AR 1302.

In deciding the weight to give to any medical opinion, the ALJ considers factors such as the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors which tend to support or contradict the opinion, including the source's understanding of the agency's disability program and evidentiary requirements, and the source's familiarity with the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ gave Dr. Hopfenbeck's opinion little weight. AR 985. The ALJ found that the doctor's opinion was inconsistent with the overall medical evidence of record. AR 984. The ALJ further found that Dr. Hopfenbeck based his evaluation primarily on Plaintiff's subjective statements and that Plaintiff appeared to inflate her symptoms and functional limitations during the evaluation. AR 984. Finally, the ALJ found that the doctor's "opinion regarding the effects of the irritable bowel syndrome is speculative and outside the scope of his expertise" and that the opinion is also inconsistent with Plaintiff's benign gastrointestinal workups and evidence that Plaintiff's symptoms are managed effectively with conservative medication. AR 985.

Plaintiff argues that the ALJ erred by discounting Dr. Hopfenbeck's opinion based on overreliance on Plaintiff's self-reporting. Dkt. 13, at 10. "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). However, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162–63 (9th Cir. 2014). Here, Dr. Hopfenbeck performed clinical tests,

during which Plaintiff was unable to recall four objects after five minutes, had some difficulty recalling past presidents, had difficulty with serial sevens, and miscalculated change. AR 1301. Dr. Hopfenbeck further noted that Plaintiff showed a significant amount of anxiety, became agitated and embarrassed when making mistakes, and appeared overwhelmed during the testing. AR 1301. Dr. Hopfenbeck further observed that Plaintiff became physically and emotionally agitated during her interview, tearful at several points, and her overall mood was depressed. AR 1300–01. These findings are consistent with Dr. Hopfenbeck's opinion that Plaintiff's pattern of making mistakes and tendency to panic would cause her to be off-task and result in episodes of tearfulness and psychomotor agitation that make her a distraction to others in the workplace. AR 1302. These findings are also consistent with Dr. Hopfenbeck's assessment of Plaintiff's mental functioning, including that her impairments would make it difficult for Plaintiff to focus and sustain concentration, understand and remember instructions, and complete a normal workday without interruption from psychologically based symptoms. AR 1304–06. Therefore, the ALJ's rejection of Dr. Hopfenbeck's opinion on grounds that it was based primarily on Plaintiff's self-reports is not supported by substantial evidence.

Plaintiff next argues that "Dr. Hopfenbeck was fully qualified to assess IBS and its interaction with emotional distress." Dkt. 13, at 11. The Commissioner does not dispute that Dr. Hopfenbeck could assess Plaintiff's IBS as an M.D.; however, the Commissioner argues that the ALJ did not err by finding the doctor's evaluation of IBS outside the scope of the doctor's expertise. Dkt. 22, at 25. The regulations provide that the ALJ may "give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Here, Dr. Hopfenbeck opined specifically on the effects of Plaintiff's IBS on

Plaintiff's mental health conditions and found that "[a]s a result of IBS, [Plaintiff's] symptoms of stress/depression, poor concentration and attention, proneness to panic and anxiety, and fatigue have worsened, complicated and limited overall functional capacity." AR 1302. Accordingly, Dr. Hopfenbeck's opinion was within his areas of expertise as a board-certified doctor in adult psychiatry. *See* AR 1303. Further, because Dr. Hopfenbeck's opinion concerned the psychiatric effects of Plaintiff's IBS, the ALJ did not reasonably find Dr. Hopfenbeck's opinion inconsistent with evidence of Plaintiff's benign gastrointestinal workups and Plaintiff's symptoms being managed with medication. Therefore, the ALJ's rejection of Dr. Hopfenbeck's opinion regarding the effects of Plaintiff's IBS on her mental functioning was not supported by substantial evidence.

Plaintiff argues that Dr. Hopfenbeck's assessment of Plaintiff's daily activities should be preferred to the ALJ's assessment of these activities. Dkt. 13, at 11–12. The ALJ found that Plaintiff "appeared to minimize her activities of daily living during the evaluation" with Dr. Hopfenbeck and that the evidence in the record showed that Plaintiff "regularly described herself as a stay-at-home mother and homemaker," that Plaintiff "is the primary caregiver to her young children and busy handling the household responsibilities, like cooking performing household chores, shopping, and running errands." AR 984. The ALJ further found that, although Plaintiff testified that her husband and older daughters help with household responsibilities, the evidence showed that Plaintiff's husband was gone for long periods for work and that her daughters moved out for periods during the relevant period. AR 984. Dr. Hopfenbeck's assessed Plaintiff's mental functioning and opined that Plaintiff's anxiety and depression would cause Plaintiff to make mistakes at work, be off task a lot of the time, have episodes of tearfulness and agitation causing her to be a distraction to others in the workplace, and impact her ability to focus and relate to others. AR 1302. These activities are not reasonably inconsistent with Dr. Hopfenbeck's opinion

that Plaintiff's mental impairments would limit Plaintiff's ability to function in the workplace. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (finding that the ALJ did not properly reject a physician's opinion based on evidence of a claimant's childcare activities when the record provided no details as to what the regular childcare activities involved); *see also Fair*, 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . ."). Therefore, the ALJ's rejection of Dr. Hopfenbeck's opinion based on inconsistency with Plaintiff's daily activities is not specific, legitimate, or supported by substantial evidence.

The Commissioner argues that, "even if the ALJ erred in this finding, the error would be harmless because he provided other valid reasons for discounting the opinion, supported by the record, and it does not negate the validity of the ALJ's ultimate conclusion." Dkt. 22, at 25 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded by regulation on other grounds*). The ALJ found that Dr. Hopfenbeck's opinion regarding Plaintiff's significant mental symptoms and functional limitations was not consistent with the record, including evidence of Plaintiff regularly denying or not mentioning mental health symptoms, of Plaintiff's performance during other evaluations and treatment visits, and that Plaintiff sought mental health treatment only twice in the record for symptoms stemming from situational stressors. AR 984. The record shows that Plaintiff reported experiencing debilitating anxiety and panic to mental health treatment providers in 2011, 2015, 2016, and 2017. AR 456–66, 469–507, 709–10, 796, 799, 814–69, 875–76; *see also Regennitter v. Commissioner*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"). Further,

although the ALJ found that treatment notes consistently noted unremarkable mood, affect, behavior, orientation, memory, insight, and judgment, the ALJ failed to provide specific and legitimate reasons explaining how these findings are inconsistent with Dr. Hopfenbeck's opinion that Plaintiff's tendency to panic and severe depression would prevent Plaintiff from being able to accomplish gainful employment. *See* AR 1302; *see Lester*, 81 F.3d at 830–31 (where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing"). Finally, contrary to the ALJ's finding that Plaintiff's symptoms stemmed from situational stressors, Plaintiff's treatment providers diagnosed Plaintiff with anxiety disorder, adjustment disorder with mixed anxiety and depressed mood, and panic disorder (AR 460, 465, 469, 474, 479, 484, 489, 494, 499, 710, 797, 800, 852, 869)—indeed, the ALJ found at step two that Plaintiff has the severe impairments of major depressive order and generalized anxiety disorder. Therefore, the ALJ's rejection of Dr. Hopfenbeck's opinion on grounds that his opinion was inconsistent with the record is not specific, legitimate, or supported by substantial evidence.

B. <u>Jessica Stevens, FNP</u>

Nurse Stevens examined Plaintiff on July 21, 2017, and opined regarding Plaintiff's physical and mental functional limitations.[5] AR 884–87. Nurse Stevens assessed that Plaintiff's depression and anxiety affect Plaintiff's physical condition and/or contribute to the severity of her symptoms, that Plaintiff's pain frequently interferes with her attention and concentration, and that Plaintiff's stress constantly interferes with her attention and concentration. AR 885. Nurse Stevens also assessed specific functional limitations, including that, in an eight-hour workday, Plaintiff

---

[5] Plaintiff only specifically challenges the ALJ's evaluation of Nurse Stevens' assessment of Plaintiff's mental functional limitations. Dkt. 13, at 13–15.

needs unscheduled breaks seven times per day, will be off task more than 30%, will be absent from work and unable to complete a full workday five days or more per month, and is expected to perform a job less than 50% efficiently than an average worker. AR 886. Nurse Stevens further noted that Plaintiff's IBS causes her to need frequent breaks. AR 887. On another form also dated July 21, 2017, Nurse Stevens note that Plaintiff's mood was "extremely nervous" with "nervous chatter" and "nervous diarrhea." AR 1256.

The ALJ gave Nurse Stevens' opinion little weight. AR 982. The ALJ found that the ALJ primarily based her stated on Plaintiff's subjective statements, that the nurse did not perform an examination of Plaintiff's abdomen, back or extremities, that Nurse Stevens' opinion was inconsistent with her own treatment notes, and that her opinion was inconsistent with the objective record, Plaintiff's treatment history, and Plaintiff's daily activities. AR 981–82.

Less weight may be assigned to the opinions of other sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, the ALJ's decision should reflect consideration of such opinions, and the ALJ may discount the evidence by providing reasons germane to each source. SSR 06-3p (ALJ should explain weight given to other source opinions or otherwise ensure that discussion of the evidence allows for following the ALJ's reasoning "when such opinions may have an effect on the outcome of the case."); *Molina*, 674 F.3d at 1111.

Plaintiff argues that the ALJ erred by discounting Nurse Stevens' opinion by finding that the nurse over relied on Plaintiff's self-reports and that the nurse's opinion was inconsistent with her own findings. Dkt. 13, at 14. Although Nurse Stevens observed that Plaintiff was "extremely nervous" during her examinations and had excused herself to the bathroom due to nervous diarrhea (AR 1256), Nurse Stevens performed no clinical psychological examinations on Plaintiff to assess Plaintiff's mental functional limitations. Further, Dr. Stevens noted that Plaintiff presented as

"healthy appearing, alert, oriented, no acute distress, pleasant." AR 1256. Therefore, the ALJ provided a germane reason to discount Nurse Stevens assessed mental functional limitations by finding that the nurse had relied on Plaintiff's self-reports and that the nurse's opinion was inconsistent with her own treatment notes. *See Ghanim*, 763 F.3d at 1162–63.

Plaintiff next argues that the ALJ erred by rejecting Nurse Stevens' opinion by finding that the opinion was inconsistent with the record as a whole and activities of daily living. Dkt. 13, at 14. The ALJ found that Nurse Stevens' opinion was inconsistent with Plaintiff "regularly denying or not even mentioning having any mental health symptoms throughout the record" and Plaintiff's "ability to take care of her young children, handle the household responsibilities, shop, run errands, and engage in outdoor activities." AR 981–82. The record shows that Plaintiff reported experiencing debilitating anxiety and panic to mental health treatment providers in 2011, 2015, 2016, and 2017. AR 456–66, 469–507, 709–10, 796, 799, 814–69, 875–76. Further, the ALJ failed to identify how evidence of Plaintiff's daily activities in caring for her household was inconsistent with Nurse Stevens' opinion that Plaintiff's mental impairments would impact her ability to work and require Plaintiff to be absent from work, be off-task, and take unscheduled breaks. *See Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). However, because the ALJ gave other germane reasons for discounting Nurse Stevens' opinion, including that Nurse Stevens relied on Plaintiff's self-reports and her opinion was inconsistent with the nurse's own treatment notes, described above, this error was harmless. *See Molina*, 674 F.3d at 1115 (an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination'").

ORDER
PAGE - 16

C. Jamie Arbizu, CMHC

Counselor Arbizu, a clinical mental health counselor with Southwest Behavioral Health Center, provided an assessment of Plaintiff's mental functional limitations dated May 6, 2016. AR 730–731, 853–55. Counselor Arbizu found that Plaintiff "has major issues with anxiety that may be able to have some resolution . . . regarding mental health," but that Plaintiff's "[p]hysical symptoms of anxiety may have longer lasting effects." AR 730. Counselor Arbizu assessed Plaintiff with marked limitations in all categories of mental functioning for work-related activities, that Plaintiff is likely to be absent from work for four days or more, and that Plaintiff will be less than 50% efficient than an average worker in a full-time job. AR 730–31.

The ALJ assigned little weight to Counselor Arbizu's opinion. The ALJ found that Counselor Arbizu based her opinion primarily on Plaintiff's subjective statements, that the counselor's opinion was inconsistent with Plaintiff's treatment notes from the clinic, inconsistent with evidence that Plaintiff made progress with treatment, and inconsistent with the overall medical evidence of record, including Plaintiff's denying mental health problems and Plaintiff's daily activities. AR 980–81.

Plaintiff argues that the ALJ erred by discounting Counselor Arbizu's opinion by finding that the source over relied on Plaintiff's subjective reports. Dkt. 13, at 16. Counselor Arbizu noted that she based her opinion on Plaintiff counseling/therapy sessions, psychological evaluations, and progress notes, and the record contains treatment notes from Plaintiff's sessions with Southwest Behavior Health Center between September 2015 and December 2016. AR 731, 814–69. Accordingly, the ALJ did not reasonably find that Counselor Arbizu's opinion was based more heavily on Plaintiff's self-reports than on the clinical observations. Therefore, the ALJ erred by rejecting Counselor Arbizu's opinion by finding that the provider based her opinion primarily on

1    Plaintiff's subjective reports. *See Ghanim*, 763 F.3d at 1162–63.

2         Plaintiff next argues that the ALJ erred by rejecting Counselor Arbizu's opinion by finding

3    that the opinion was inconsistent with the overall record, Plaintiff denying mental health problems,

4    effective and inconsistent treatment, and activities of daily living. Dkt. 13, at 16. The ALJ found

5    that Counselor Arbizu's opinion was inconsistent with Plaintiff "regularly denying or not even

6    mentioning having any mental health symptoms throughout the record," that Plaintiff "made

7    progress with treatment until she discounted care to move to Northern Utah," evidence that

8    Plaintiff made progress with treatment, and Plaintiff's "ability to handle the responsibilities of her

9    demanding, active home life." AR 980–81. Contrary to the ALJ's finding, the record shows that

10   Plaintiff reported experiencing debilitating anxiety and panic to mental health treatment providers

11   in 2011, 2015, 2016, and 2017. AR 456–66, 469–507, 709–10, 796, 799, 814–69, 875–76. Further,

12   the records cited by the ALJ stated that, although Plaintiff has done "relatively well with therapy,"

13   Plaintiff continued to experience difficulty sleeping, panic attacks, and continuing anxiety.

14   AR 799, 867; *see Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement

15   and debilitating symptoms are a common occurrence, and in such circumstances it is error for an

16   ALJ to pick out a few isolated instances of improvement over a period of months or years and to

17   treat them as a basis for concluding a claimant is capable of working."). Finally, the ALJ failed to

18   identify how evidence of Plaintiff's daily activities in caring for her household was inconsistent

19   with Counselor Arbizu's opinion that Plaintiff's mental impairments would impact her ability to

20   work and require Plaintiff to be absent from work be less efficient than the average worker. *See*

21   *Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more

22   grueling environment of the workplace, where it might be impossible to periodically rest or take

23   medication."). Therefore, the ALJ erred by discounting Counselor Arbizu's opinion by finding it

inconsistent with Plaintiff's denying mental health symptoms, effective treatment, and daily activities.

The Commissioner argues that the ALJ gave other germane reasons for discounting the opinion of Counselor Arbizu, including that the counselor's opinion was inconsistent with her treatment notes, which consistently noted unremarkable mood, affect, behavior, orientation, insight, memory, and judgment, and the longitudinal objective record, which showed strong memory, attention, concentration, and other intact functioning. Dkt. 22, at 28; *see* AR 974. An ALJ may discount other source opinions that conflict with medical evidence. *See Lewis*, 236 F.3d at 511. Because the ALJ gave other germane reasons for discounting Counselor Arbizu's opinion, including that the counselor's opinion was inconsistent with her treatment notes and the objective record, the ALJ's error in rejecting Counselor's Arbizu's opinion on the other grounds described above was harmless. *See Molina*, 674 F.3d at 1115 (an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination'").

### 3. Subjective Testimony

Plaintiff contends that the ALJ improperly evaluated Plaintiff's testimony. The rejection of a claimant's subjective symptom testimony[6] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. An ALJ may reject a claimant's symptom

---

[6] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

Plaintiff testified that she becomes "very easily stressed out and overwhelmed is [sic] social situations or situations where there are expectations of me and deadlines," which causes her to make frequent and unexpected trips to the bathroom and cause her to experience panic attacks. AR 53–54. Plaintiff testified that the medications make her drowsy, dizzy, and unable to focus. AR 54. Plaintiff testified that her anxiety and panic attacks are frequent, that "[b]eing in any situation on me where I have to be around other people causes great anxiety and many trips to the restroom."[7] AR 1014. The ALJ found that "[t]he overall medical evidence of record establishes that the claimant has some functional limitations due to her severe physical and mental impairments" but that "the medical evidence does not support the degree of limitation alleged by the claimant." AR 972.

Plaintiff argues that the ALJ erred by discounting Plaintiff's subjective testimony by citing objective evidence and inconsistent treatment. Dkt. 13, at 17. An ALJ properly considers prior inconsistent statements in evaluating a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ found that, although Plaintiff alleged chronic abdominal pain and diarrhea requiring her to use the restroom several times a day, "the evidence shows that [Plaintiff] regularly endorsed experiencing none to only intermittent gastrointestinal symptoms with few

---

[7] Plaintiff also alleged experiencing back pain. *See* AR 56–57, 1014. However, Plaintiff only challenges the ALJ's evaluation of her testimony regarding Plaintiff's mental health limitations. Dkt. 13, at 17–18; Dkt. 22, at 23–24.

accidents." AR 974. Although the ALJ cites various medical records during which Plaintiff did not report experiencing gastrointestinal symptoms, several medical reports in the record identify Plaintiff reporting abdominal pain and diarrhea as well as being treated for IBS or GERD. AR 706, 782–810, 888. Indeed, the ALJ found at step two that Plaintiff has severe impairments of IBS and GERD. AR 958. It is error for the ALJ to "cherry-pick[]" statements in a medical record; rather, observations "must be 'read in context of the overall diagnostic picture' the provider draws." *Ghanim*, 763 F.3d at 1162, 1164 (citation omitted). Further, the evidence cited by the ALJ showing lack of physical signs of gastrointestinal symptoms is not reasonably inconsistent with Plaintiff's allegations of debilitating symptoms from her anxiety and mental impairments, which, Plaintiff alleges, cause her to have to experience diarrhea and frequent the bathroom. AR 53–54, 1014. Therefore, the ALJ's reasons for discounting Plaintiff's testimony regarding debilitating symptoms from her anxiety and mental impairments was not specific, clear, or convincing.

Plaintiff further argues that the ALJ erred by discounting Plaintiff's symptom testimony based on evidence of Plaintiff's daily activities. Dkt. 13, at 17. An ALJ may consider daily activities in evaluating a claimant's testimony regarding his physical limitations and the severity of his symptoms. *See Fair*, 885 F.2d at 603 ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling pain." (emphasis in original)). The ALJ found that Plaintiff made inconsistent statements about her reliance on her husband and older daughter to assist with household responsibilities[8] and

---

[8] The Commissioner further argues that the ALJ properly discounted Plaintiff's testimony based on these inconsistent statements. Dkt. 22, at 16 (citing *Tommasetti*, 533 F.3d at 1039). An ALJ properly considers "prior inconsistent statements concerning the *symptoms*" in evaluating a claimant's testimony. *Tommasetti*, 533 F.3d at 1039 (emphasis added). Because Plaintiff's statements about her husband and daughters do not relate to her medical impairments, the ALJ did not properly discount Plaintiff's testimony based on these statements. *See Frost v. Berryhill*, 727 Fed. App'x. 291, 295 (9th Cir. 2018).

that the evidence showed that Plaintiff is "able to perform activities of daily living independently, which include managing self-care, cooking, performing light household chores and yard work, driving, shopping, and running errands." AR 976–77. This evidence does not reasonably undermine Plaintiff's testimony that she experiences debilitating symptoms from her anxiety and mental impairments and must take frequent bathroom breaks, which symptoms Plaintiff alleges are triggered when she gets overwhelmed in social situations or situations with expectations and deadlines. AR 53–54. Further, these activities are not clearly transferable to a work setting. *See Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Therefore, the ALJ's reasons for discounting Plaintiff's symptom testimony based on evidence of Plaintiff's daily activities was not specific, clear, or convincing.

The Commissioner argues that that ALJ provided several other valid reasons to discount Plaintiff's testimony regarding the severity of her symptoms, including inconsistent statements about why Plaintiff stopped working. Dkt. 22, at 17–18. The ALJ found that Plaintiff reported to providers in 2011 that she loses interest quickly in jobs and that Plaintiff inconsistently reported that she stopped working due to mental health conditions or bowel issues. AR 977 (citing AR 456). An ALJ may consider whether a claimant stopped working for some reason other than the alleged disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Here, because Plaintiff stopped working in 2013, her statements in 2011 were not reasonably relevant to why Plaintiff stopped working in 2013. Further, because Plaintiff alleges that her mental health conditions cause her bowel issues, there is no clear inconsistency between Plaintiff's statements that she stopped working for mental health issues and that she stopped working for gastrointestinal issues. Therefore, the ALJ did not reasonably discount Plaintiff's testimony based on inconsistent

statements about why Plaintiff stopped working.

The Commissioner further argues that the ALJ properly discounted Plaintiff's symptom testimony based on evidence that Plaintiff returned to her gastroenterologist in January of 2018 to alter treatment notes in support of her disability claim. Dkt. 22, at 18–19 (citing AR 978). "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *accord Lester*, 81 F.3d 832 (absent "evidence of actual improprieties," examining doctor's findings entitled to no less weight when examination procured by the claimant than when obtained by the Commissioner). At the January 2018 visit, Plaintiff's examining provider detailed Plaintiff experiencing abdominal pain, bloating, diarrhea, heartburn, rectal bleeding, reflux, indigestion, anxiety, depression, and back pain and assessed Plaintiff with IBS and diarrhea, among other things. AR 1226. Because there was no evidence of actual improprieties in the examining doctor's findings, the ALJ did not properly discount Plaintiff's testimony by finding that she returned to her gastroenterologist in order to document her disability.

Finally, the Commissioner argues that the ALJ properly discounted Plaintiff's subjective testimony based on evidence of Plaintiff's inconsistent treatment, failure to take her medication, and large treatment gaps. Dkt. 22, at 19–20 (citing AR 974–75). An ALJ may discount subjective testimony where there is unexplained or inadequately explained failure to seek or follow through with treatment. *Tommasetti*, 533 F.3d at 1039. However, the Ninth Circuit Court of Appeals has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter*, 166 F.3d at 1299–1300. Plaintiff testified at the hearing that there were gaps in her treatment

between March 2018 and November 2019 because she was uninsured and unable to afford it and that she did not go to any free or low-cost clinics because she was not aware that they existed. AR 1004, 1009. Further, the records cited by the ALJ show that Plaintiff sought refills for her gastrointestinal medication, that she reported to treatment providers that certain mental health medications did not help and that others made her experience side effects, and that she has tried different medications to treat her impairments. AR 54, 501, 503, 796. Therefore, the ALJ did not properly discount Plaintiff's testimony based on inadequate treatment or failure to follow through with treatment.

### 4. Remedy

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)); *accord Leon v. Berryhill*, 880 F.3d 1044, 1045 (9th Cir. 2017) ("An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule.").

Before remanding a case for an award of benefits, three requirements must be met. First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d 995 at 1020). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id*. In so doing, the Court considers the existence of "'outstanding issues'" that must be resolved before a disability determination can be made. *Id*. (quoting *Treichler*, 775 F.3d at 1105). Third, the Court must

conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id.* (quoting *Garrison*, 759 F.3d at 1021).

In this case, the first and second requirements have been met. As described above, the ALJ failed to provide legally sufficient reasons for rejecting the opinion of examining physician Dr. Hopfenbeck and Plaintiff's subjective testimony. Additionally, the Commissioner held two administrative hearings in this matter, during which the ALJ took testimony from Plaintiff and vocational experts. Further, the record contains opinion evidence from Plaintiff's treating providers, medical records, laboratory reports, medical and psychological consultative examinations, and a psychiatric evaluation secured by Plaintiff. Therefore, the Court finds that this matter has been fully developed and further administrative proceedings would serve no useful purpose.

Under the third requirement, the Court considers whether it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Dr. Hopfenbeck examined Plaintiff on June 5, 2020; therefore, his opinion is entitled to more weight than the opinions of non-examining physicians.[9] *See Lester*, 81 F.3d at 830. Dr. Hopfenbeck assessed, among other limitations, that Plaintiff would be off task for more than 30% of an eight-hour workday and would be absent five days or more a month as a result of her mental impairments. AR 1304–08. At the 2020 hearing, the VE testified than an individual who has two unscheduled absences a month and who is off task 15% of the time would not be able to maintain gainful employment. AR 1033–34. Based on the VE's testimony, Plaintiff would be precluded from maintaining gainful employment

---

[9] Dr. Tim Kockler, Ph.D., also examined Plaintiff; however, Dr. Kockler did not provide an assessment of Plaintiff's functional abilities due to her severe mental impairments. AR 978.

1  when properly crediting the limitations assessed by Dr. Hopfenbeck. Therefore, this matter is

2  reversed and remanded for an award of benefits.

3                                        **<u>CONCLUSION</u>**

4          For the reasons set forth above, this matter is REVERSED and REMANDED for an award

5  of benefits.

6          DATED this 10th day of February, 2022.

7

8

                                          MARY ALICE THEILER
9                                         United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23